**Katherine Marie MESTER, Appellant,**

**v.**

**ST. PATRICK'S CATHOLIC CHURCH, Estherville, Iowa, Appellee.**

**No. 53638.**

Supreme Court of Iowa.

Nov. 12, 1969.

James, Greer, Nelson & Bertell, Spencer, for appellant.

Fitzgibbons Brothers, Estherville, for appellee.

MOORE, Justice.

Plaintiff's damage action against defendant abutting property owner for personal injuries sustained in her fall upon ice where defendant's driveway crosses the public sidewalk was tried without a jury. The trial court found plaintiff failed to prove the alleged negligence and plaintiff was contributorially negligent. From judgment for defendant, plaintiff has appealed. We affirm.

I. The trial court's findings of fact in this law action are binding upon us if supported by substantial evidence. Rule 344(f) par. 1, Rules of Civil Procedure; Townsley v. Sioux City, Iowa, 165 N.W.2d 523. This case is not reviewable here de novo. The trial court's decision on the facts has the effect of a jury verdict. It was for the court to determine the credibility of the witnesses and the weight to be given their testimony. Further, the evidence will be construed in the light most favorable to the trial court's judgment. Brooks v. Dickey, Iowa, 158 N.W.2d 11, 13, and citations for each of these general legal principles.

II. Plaintiff, age 60 at the time of the accident, testified that about 5:30 p. m. January 7, 1964 she was walking east on the north sidewalk along 1st Avenue South in Estherville within 100 feet of her home where she had resided with her husband for 35 years, it was then dark. As she crossed a driveway leading into defendant's premises she saw water and ice on the sidewalk ahead of her and as she proceeded across the driveway to the eastern part thereof she fell to the sidewalk when her left foot gave way. In attempting to arise she put her hands down on the walk and testified she felt water on top of ice. She was not wearing gloves or galoshes. She testified further there was snow piled inside the cyclone fence along the south property line of defendant's property and she could see water from melting snow coming down the drive and over the sidewalk. The water was not freezing at the time but made the tracks of ice which were formed across the sidewalk from the street into defendant's property wet and slippery.

On cross-examination plaintiff stated: "Yes, it was rough. I fell like where the cars go in and out, just east of there." We feel it is unnecessary to set out plaintiff's testimony given on cross-examination regarding her knowledge of the existing condition prior to her fall and serious injury as we do not reach the question of contributory negligence.

Floyd McDonough, custodian of defendant's school at the time of the accident, was called as a witness for plaintiff. He identified exhibits B through N, photographs taken at least 18 months after the accident showing the sidewalk, driveway, cyclone fence, defendant's blacktopped school playground and topography. The entire playground area shown in the various photographs slopes south towards the sidewalk and the natural drainage is from the school building towards the sidewalk and street. Apparently no photographs were taken immediately following the accident. Plaintiff did not employ counsel for many months after her injury. That no doubt is explanatory of why the municipality was not made a party defendant.

McDonough testified that as vehicles such as garbage and milk trucks used the driveway in and out of defendant's prem-

ises two separate tracks approximately 16 inches wide were formed across the sidewalk. It was packed down and the tracks were in the form of solid ice of two and a half to three and a half inches thick.

McDonough's direct testimony includes:

"Q. And now this ice, it wasn't solid all the way across the sidewalk? A. No, just in the tracks where the traffic had been.

"Q. And was the water on top of the ice? A. It was thawing; I wouldn't say a lot of it; it was damp, yes."

On cross-examination McDonough was asked if the accumulated snow and ice on the sidewalk came from tracks of the tires of vehicles going in and out of the school property, and the witness answered as follows:

"A. I imagine that is where it would come from.

"Q. And was it solid all the way across this driveway that crosses the sidewalk from one end to the other? A. On the driveway, no, it wasn't solid * * *."

Later on in the cross-examination he was asked:

"Q. What was between the two tracks? A. Between the two tracks, nothing; just a little water running through there.

"Q. Bare sidewalk? A. Yes.

"Q. No ice? A. There might have been a skiff of snow but no ice to my knowledge."

Plaintiff's husband described the scene as he observed it the morning after the accident. He stated a pile of snow two to three feet high and four feet wide was pushed up along the inside of defendant's fence and as it melted the water drained onto the sidewalk along the entire south side of defendant's property.

The trial court's findings of fact include:

"In summarising the proof as to the condition of the sidewalk where plaintiff fell, the court finds that the only accumulation of ice in front of defendant's driveway consisted of the two vehicular tracks leading from the street onto the property as above described. In further support of this finding, the court refers to Defendant's Exhibit No. 3 being a summary of weather information from December 8, 1963 through January 7, 1964. The exhibit is self-explanatory but it is to be noted that during this period there was a total accumulation of five inches of snow up to December 18, 1963. On December 24 and 25 the temperature rose above freezing, and the record shows seven continuous days of thawing condition from January 1, 1964 through January 7. All of the evidence shows that it was still thawing at the time of plaintiff's fall with no freezing having taken place since the night before. Her fall apparently occurred when she stepped on the east track of ice which crossed the sidewalk. The court, in weighing the evidence, is not overlooking the first paragraph of a letter from Dr. John L. Powers, M.D., Plaintiff's Exhibit O, wherein he states that she narrated to him, following the accident, that her heel caught in an irregular area of sidewalk. She denies making this statement. * * *

"The evidence in the instant case strongly supports a finding that the icy spot on the sidewalk where plaintiff fell accumulated as a result of normal use of the driveway from the wheels of vehicles which neither belonged to defendant nor were under its control. Plaintiff has failed to establish by a preponderance of the evidence her allegations that defendant diverted snow and water from its premises onto the sidewalk. The evidence, on the contrary, establishes that the area in question was formed by normal vehicular traffic and not by melting ice and snow originating from the school grounds. Piles of snow inside the cyclone fence of defendant would melt and run directly south onto the sidewalk rather than in a lateral direction through the driveway. The evidence is undisputed that the playground area had been cleared of snow since shortly after the last

three-inch snowfall on December 17, 1963. (See defendant's Exhibit No. 3.) With the seven days of thawing weather prior to the accident and the custodian's testimony, who was called as a witness for plaintiff, that there was no snow on the playground other than that piled up along the inside of the fence, the court must presume that there would be no snow in or directly north of the opening of the driveway which could melt and run onto the sidewalk; that the only way ice and snow could accumulate on this vital area was from vehicular traffic."

These findings of fact are supported by substantial record evidence.

III. Plaintiff's first assigned error is the trial court erred in holding defendant had no duty to keep a portion of a public sidewalk which crosses a driveway entering its property free of ice and snow which had accumulated there as a result of what was normal and usual use of the driveway.

■ The municipality has a statutory duty to exercise reasonable care to keep its sidewalks reasonably safe for use by pedestrians. Section 389.12, Code 1966; City of Des Moines v. Barnes, 238 Iowa 1192, 1199, 30 N.W.2d 170, 173; 8 Drake Law Review 149, "Injuries from Ice and Snow on Sidewalks."

The common law imposes no duty upon abutting property owners to keep the sidewalks in front of their premises free from ice accumulated thereon in the natural way. Breuer v. Mataloni, 257 Iowa 445, 448, 133 N.W.2d 114, 115, 116; Franzen v. Dimock Gould & Co., 251 Iowa 742, 747, 748, 101 N.W.2d 4, 8; Mutzel v. Northwestern Bell Tel. Co., 247 Iowa 14, 18, 72 N.W.2d 487, 489; Anno. 88 A.L.R.2d 331.

The factual situation in the case at bar is very similar to our two most recent cases involving a pedestrian's fall where a driveway crosses a public sidewalk, Breuer v. Mataloni and Franzen v. Dimock Gould & Co., both supra. In each the municipality was also a party defendant.

In Franzen at page 746, 251 Iowa, page 7, 101 N.W.2d, we say: "The liability of the city is based upon its statutory duty * * *. The property owner's liability in such cases is based upon his negligence in creating and maintaining a dangerous condition or nuisance causing the damage." (Citations). We therein held the evidence was sufficient to create a jury question of whether the defendant abutting property owner had created the dangerous condition where the driveway crossed the public sidewalk.

In dictum in Franzen mention is made the conclusion might have been different if the driveway had been a private residential driveway. This dictum is strongly attacked in the dissent and mentioned in Breuer. The rule requiring some negligence on the part of the abutting property owner causing a dangerous condition or nuisance is the same as to all driveways.

■ The general rule is thus stated in 63 C.J.S. Municipal Corporations § 862b(1), pages 229, 230: "Also, an abutting owner or occupant is not liable at common law for injuries resulting from snow or ice coming on the sidewalk through natural causes, or where it accumulates through no wrongful act or omission on his part; nor is he bound to guard against the risk of accident by sprinkling ashes or using any other like precautions."

In Breuer v. Mataloni, supra, plaintiff fell on a public sidewalk where it crossed a private residential driveway. We held the abutting property owner was entitled to a directed verdict. The evidence showed the sidewalk had been cleaned and thereafter snow and ice accumulated from vehicles going in and out of defendant's premises. At page 448, 257 Iowa, page 116, 133 N.W.2d, we say: "Abutting property owners owe no duty to the general public to keep that portion of a public sidewalk which crosses a private residential driveway free and clear of ice and snow which accumulates there from the ordinary and usual use of such driveway." The trial

court correctly applied this rule to the facts in the case at bar.

IV. Plaintiff's second assignment is the trial court erred in holding the vehicular traffic upon the driveway was not controlled by it because the vehicles did not belong to employees or customers. The identity of any particular vehicle using defendant's driveway is entirely lacking in the record. They were only referred to generally by the witness McDonough as milk, garbage and delivery trucks. Their use of the driveway was the ordinary and usual use. The record does not disclose any vehicle using the driveway belonged to or were under the direct control of defendant. In this regard the facts here are different than those in Franzen v. Dimock Gould & Co., supra. Plaintiff's second assigned error is without merit.

V. Plaintiff's third assignment is the trial court erred in finding the ice in question was formed by vehicular traffic and not melting ice and snow originating from defendant's premises. This finding is supported by substantial evidence and is binding on us as pointed out in Division I of this opinion.

VI. Plaintiff's fourth and fifth assignments of error raise an evidentiary problem concerning defendant's affirmative defense that plaintiff was contributorially negligent and challenge the trial court's findings it had been established. The trial court's finding of plaintiff's failure to prove her alleged specifications of negligence is supported by substantial evidence and bars any recovery. We therefore find it unnecessary to decide the questions raised by plaintiff's last two assignments of error.

The judgment rendered below must be and is affirmed.

Affirmed.

All Justices concur except RAWLINGS, BECKER and LeGRAND, JJ., who concur specially.

RAWLINGS, Justice (concurring specially).

I respectfully submit trial court's findings relative to negligence on the part of defendant are accorded neither substantial support in the record nor are they justified as a matter of law. In support of this position see Smith v. J. C. Penney Co., 260 Iowa 573, 149 N.W.2d 794; Beyer v. City of Dubuque, 258 Iowa 476, 139 N.W.2d 428, 18 A.L.R.3d 416; and Franzen v. Dimock, Gould & Co., 251 Iowa 742, 101 N.W.2d 4.

On the other hand the matter of contributory negligence was determinable by trial court sitting as trier of the facts. In my opinion its finding to the effect recovery by plaintiff is barred because of contributory negligence on her part finds substantial support in the record.

I therefore concur in the result.

BECKER and LeGRAND, JJ., join in this special concurrence.